UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Marian Noelle Neff, | ) | Case No. 04-53161 |
| | ) | |
| Debtor. | ) | |
| ——————————— | ) | |
| | ) | |
| Marian Noelle Neff, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Pro. No. 05-6037 |
| v. | ) | |
| | ) | |
| Direct Loans/William D. Ford Direct Loan | ) | |
| Program and College Loan Corporation and | ) | |
| its Servicing Agent, ACS Education | ) | |
| Services, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————— | ) | |

## MEMORANDUM OPINION AND ORDER

This matter came on for trial on May 16, 2006, in Winston-Salem, North Carolina, upon the Debtor's complaint to determine the dischargeability of certain student loan obligations. Gail C. Arneke appeared on behalf of the Debtor; Anna Shedden Gorman appeared on behalf Educational Credit Management Corporation ("ECMC"), the successor-in-interest to ACS Education Services; and John W. Stone, Jr., appeared on behalf of the United States Department of Education, administrator of the William D. Ford Direct Loan Program ("Department of Education"). The Debtor appeared and testified at the trial. After considering the evidence on the record and the arguments of counsel, the court makes the following findings of fact and conclusions of law:

1

FINDINGS OF FACT

The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on October 27, 2004. The Debtor received a discharge on January 31, 2005 and her case was closed on February 7, 2005. In July 2005, the Court granted the Debtor's motion to reopen her case to seek discharge of her student loan debt and, on August 4, 2005, the Debtor filed the complaint that initiated this proceeding.

The Debtor graduated from high school in 1972 in Minnesota. For eight years, the Debtor worked on her family's farm before beginning her career in higher education. In 1980, the Debtor began taking classes at a local community college and, two years later, the Debtor transferred to Southwestern Minnesota State University in Marshall, Minnesota. The Debtor's mother funded the Debtor's undergraduate education. The Debtor graduated from Southwestern Minnesota State University in 1984 with a bachelor's degree in elementary education. After her graduation, the Debtor spent about ten years traveling. The Debtor's mother financially supported the Debtor's travels and the Debtor was not employed during this period. In approximately 1994, after the death of her mother, the Debtor moved to Idaho and began working at a public library. While working for the library, the Debtor decided to return to school to obtain a degree to further her career working in libraries.

The Debtor incurred the debts at issue in this proceeding while obtaining two master's degrees and completing one year of law school. In the fall of 1997, when the Debtor was 41 years old, the Debtor began work on a master's degree in Educational Administration (the "Educational Administration Degree") at the University of Idaho. Although she never intended to work in an educational setting, the Debtor sought the Educational Administration Degree to

2

obtain library administration skills. The Debtor continued working on her Educational Administration Degree through the spring of 1999. In the fall of 1999, although she had not completed her Educational Administration Degree, the Debtor began attending law school at the University of Idaho. After one year of law school, the Debtor discontinued her legal education and returned to work on her Educational Administration Degree. In the fall of 2001, while still working on her Educational Administration Degree at the University of Idaho, the Debtor began working towards a master's degree in Library Science (the "Library Science Degree") at Emporia State University's Portland, Oregon campus. The Debtor continued to live in Idaho and commuted to weekend classes in Portland. In the spring of 2002, the Debtor completed her Educational Administration Degree. In the spring of 2004, the Debtor completed her Library Science Degree. To fund her education at the University of Idaho and Emporia State University, the Debtor incurred the student loans at issue in this proceeding (the "Student Loans").

After her graduation from Emporia State University in the spring of 2004, the Debtor conducted a nationwide job search for librarian positions. In August 2004, after an approximately two month search, the Debtor was hired by a law firm in Winston-Salem, North Carolina. The Debtor was employed in this position at the time of trial. Despite the fact that the Debtor's current salary is approximately twenty percent below the salary of the average librarian with the Debtor's experience, the Debtor has not looked for other jobs since entering her current employment.

At the trial on this matter, the Debtor did not object to the validity or amount of the Student Loans. The Debtor has made all payments on the Student Loans as they became due. The Department of Education stipulated that, as of the date of the trial, the outstanding principal

3

balance of its loan to the Debtor was $77,604. ECMC stipulated that, as of the trial date, the Debtor owed ECMC $22,696. The Debtor's monthly payments equal $435. The Debtor has not sought a reduction in her payments by entering the Department of Education's income contingent repayment plan ("ICRP"). The Debtor's payment under the ICRP would be $357 per month.

The Debtor is a single, fifty year old woman with no dependants. The Debtor presented no evidence of disability or known medical conditions. Prior to trial, the Debtor amended the schedules that were filed with her bankruptcy petition. On her amended schedules, the Debtor showed monthly gross income of $2,594 and, after deducting taxes, long-term disability insurance, and heath insurance, the Debtor showed monthly net income of $1,954. At trial, the Debtor introduced paycheck stubs from her employer that verified her income. The Debtor's amended schedules show that she is able to meet her monthly expenses of $1,830 per month. The Debtor has monthly expenses of $315 for rent; $25 for utilities; $17 for water and sewer; $23 for telephone service; $250 for food; $50 for clothing; $15 for laundry and dry cleaning; $66 for medical and dental services; $118 for transportation; $76 for automobile insurance; $10 for personal property tax; $330 for an automobile loan repayment; $100 for miscellaneous personal expenses; and $435 for Student Loan repayments. The Debtor will pay off her automobile loan within 12 months.

CONCLUSIONS OF LAW

The relevant portions of § 523(a) of the Bankruptcy Code provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt...
(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a

4

> governmental unit or nonprofit institution, or for an obligation to repay funds
> received as an educational benefit, scholarship or stipend, unless excepting such
> debt from discharge under this paragraph will impose an undue hardship on the
> debtor...

The issue in this proceeding is whether excepting the Student Loans from discharge will impose

an undue hardship on the Debtor.  To determine whether excepting a student loan from discharge

imposes an undue hardship on the Debtor, the majority of courts apply the test set forth by the

Second Circuit in In re Brunner.  831 F.2d 395 (1987).  The Brunner test is a three-part test that

requires a debtor to show:

> (1) that the Debtor cannot maintain, based upon current income and expenses, a
> minimal standard of living for herself and her dependents if forced to repay the
> loans; (2) that additional circumstances exist indicating that this state of affairs is
> likely to persist for a significant portion of the repayment period of the student
> loans; and (3) that the debtor has made good faith efforts to repay the loans.

Id. at 396.  The Fourth Circuit has adopted the Brunner test.  In re Frushour, 433 F.3d 393, 400

(2005).  In order for the Student Loans to be discharged, the Debtor must show that she meets

each prong of the Brunner test by a preponderance of the evidence.  Grogan v. Garner, 498 U.S.

279, 291 (1991).   Failure to satisfy one prong of the Brunner test will result in the Student Loans

being excepted from discharge.  In re Faish, 72 F.3d 298, 306 (3d Cir. 1995).  In this matter, the

Debtor has failed to meet either of the first two prongs of the Brunner test.  The court will

discuss each of those portions of the test but, as failure of any part of the Brunner test is

dispositive, the court will not analyze the third prong.

1.  The Debtor can maintain a minimal standard of living while repaying the Student Loans.

The first prong of the Brunner test requires the court to examine the Debtor's income,

expenses, and standard of living.  If the Debtor has maximized her income and minimized her

expenses but still cannot maintain a minimal standard of living while repaying the student loans,

5

then the Debtor has met the first prong of the <u>Brunner</u> test.  <u>In re Ekenasi</u>, 325 F.3d 541, 546 (4th

Cir. 2003); <u>In re Perkins</u>, 318 B.R. 300, 305 (Bankr. M.D.N.C. 2004).

      In this proceeding, the Debtor's expenses are minimal.  In particular, the Debtor's

housing expense is below that typically seen in this court.  As such, the court finds that the

Debtor has minimized her expenses.  However, it is not as clear that the Debtor has maximized

her income.  While the Debtor testified that she would be willing to move to obtain a higher

paying job, the Debtor testified that she had not investigated many career paths that might lead to

a higher salary.  Regardless, even if the court assumes that the Debtor has maximized her

income, the Debtor still fails this prong of the <u>Brunner</u> test.  Given the income and expenses

provided to the court by the Debtor, the Debtor is maintaining a minimal standard of living while

paying the Student Loans.  The Debtor's amended schedules show that, after deducting all

expenses including her Student Loan payments, the Debtor has $124 in excess income each

month.  While the Debtor testified that this excess income was not enough for her to move into a

new apartment or for her to repay a loan to a family member, neither of those expenses are

required for the Debtor to maintain a minimal standard of living.  As the Debtor is repaying the

Student Loans while maintaining a minimal standard of living, the Debtor fails the first prong of

the <u>Brunner</u> test and the Student Loans will be excepted from discharge.

2.  <u>The Debtor's efforts to repay the Student Loans do not face a certainty of hopelessness.</u>

      The second prong of the test requires the court to determine if circumstances exist that

would make the Debtor unable to repay the Student Loans during a significant portion of the

repayment period.  This prong is met when circumstances suggest a "certainty of hopelessness"

that would prevent repayment of the Student Loans.  <u>In re Robertson</u>, 999 F.2d 1132, 1136 (7th.

Cir. 1993). This portion of the <u>Brunner</u> test is difficult for a debtor to meet. <u>Frushour</u>, 433 F.3d at 401 ("Only a debtor with rare circumstances will satisfy this factor").

In this proceeding, given the Debtor's income and expenses, repayment of the loans is not hopeless. The Debtor is currently making payments while maintaining a minimal lifestyle. Indeed, circumstances exist that make it likely that the Debtor will find repayment of the Student Loans easier in the future. The Debtor has less than two years of experience in her chosen profession. As such, her pay is likely to increase as she gains experience. Further, the Debtor placed documents in the record that indicate that the average pay for a librarian with similar training is approximately twenty percent more than the Debtor's current salary. As the Debtor gains experience, it is likely that higher paying positions will be accessible. In addition to seeing her income increase, the Debtor testified that her expenses are going to decrease. The Debtor will have paid the loan used to purchase her automobile within one year. That repayment will give the Debtor an extra $330 per month in excess income. Therefore, as it is likely that the Debtor's salary will increase over time and that the Debtor's expenses will decrease in one year, the Debtor has failed to show that circumstances exist that would make the Debtor unable to repay the Student Loans during a significant portion of the repayment period. As such, the Debtor has failed the second prong of the <u>Brunner</u> test.

CONCLUSION

The Debtor has failed to show that she cannot maintain a minimal lifestyle while paying the Student Loans. In addition, the Debtor has failed to show that circumstances exist that will make her unable to pay the Student Loans during a significant portion of the repayment period. Because the Debtor has failed to meet the first two prongs of the <u>Brunner</u> test, there is no need

7

for the court to address the third prong of the test.  As such, the Student Loans will be excepted from discharge.

THEREFORE, it is ORDERED, ADJUDGED, AND DECREED that the Student Loans shall not be discharged pursuant to 11 U.S.C. § 523(a)(8).

Service List

Marian Noelle Neff
651 Summit Street
Apt. S
Winston-Salem, NC 27101

Gail C. Arneke
Suite 2455 Winston Tower
24th Floor
301 N. Main Street
Winston-Salem, NC 27101

Anna Shedden Gorman
2300 One Wachovia Center
301 S. College Street
Charlotte, NC 28202

John W. Stone, Jr.
P.O. Box 1858
Greensboro, NC 27402

W. Joseph Burns
P. O. Box 21433
Winston-Salem, NC 27402

Michael D. West
P. O. Box 1828
Greensboro, NC 27402